1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

LUIS ANTHONY EWING et al.,,

11

Plaintiffs,

12

v.

13

GOOD SAMARITAN HOSPITAL, et al.,,

14

Defendants.

15

Case No. C07-5709 FDB

ORDER GRANTING DEFENDANTS
GOOD SAMARITAN HOSPITAL
AND PEDIATRIC INTERIM CARE
CENTER'S MOTIONS FOR
SUMMARY JUDGMENT

16

17     This matter comes before the Court on motions of Good Samaritan Hospital and Pediatric

18 Interim Care Center for summary judgment of dismissal of this action for unconstitutional and

19 tortious conduct.  The Plaintiffs have not responded to the motions for summary judgment.  After

20 having reviewed the record and Defendants' unopposed motions, the Court grants the motions for

21 summary judgment for the reasons that follow.

22                          **Introduction and Background**

23     Plaintiffs are pro se litigants that were granted leave to proceed in forma pauperis on

24 February 26, 2008.  In response to this Court's Order for a more definite statement, on March 13,

25 2009, Plaintiffs filed an amended complaint.

26 ORDER - 1

1    Plaintiffs' lawsuit is based on the actions the defendants took in regard to the December

2    2005 birth of Katherine West's baby (whom Plaintiffs refer to as Baby Boy West).  Plaintiffs sued

3    Good Samaritan Hospital (GSH), the physician, Washington Child Protective Services (CPS),

4    several social workers, the City of Puyallup Police Department, and the Pediatric Interim Care

5    Center (PICC) whom provided care to the newborn.  Plaintiffs allege fourteen causes of action and

6    purport to "reserve" four others.

7    On July 6, 2009, Defendant Good Samaritan Hospital filed the instant motion for summary

8    judgment challenging Plaintiffs claims as both factually and legally deficient.  The motion was

9    initially noted for consideration on July 31, 2009.  On July 22, 2009, the Plaintiffs moved for a 90

10   day continuance of the motion alleging, in part, that they had not received the Defendant's motion,

11   nor the Minute Orders of this Court.

12   This Court granted, in part, Plaintiffs' request for a continuance and renoted the motion for

13   summary judgment for August 28, 2009.  This order also directed the Plaintiffs to keep the Court

14   and all parties appraised of their current address.  The Court's order, addressed to the Plaintiffs at

15   their last known address, was returned as not deliverable and unable to forward, with a handwritten

16   notation "NOT HERE !! RETURN TO SENDER."

17   On August 6, 2009, Defendant Pediatric Interim Care Center moved for summary judgment,

18   asserting that neither PICC nor its employees engaged in any actionable conduct.  This motion was

19   noted for consideration on August 28, 2009, in conjunction with consideration of GSH's motion.

20   The Plaintiffs have failed to respond to either motion for summary judgment.

21                                **Standards for Summary Judgment**

22   A party is entitled to summary judgment if that party can demonstrate "that there is no

23   genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

24   of law."  Fed. R. Civ. P. 56(c).  A party is entitled to summary judgment where the documentary

25   evidence produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby, Inc.,

26   ORDER - 2

1   477 U.S. 242, 251 (1986).

2       The party seeking summary judgment bears the initial burden of informing the Court of the

3   basis of its motion and identifying those portions of the pleadings, depositions, answers to

4   interrogatories, and admissions on file, together with the affidavits, if any, that it believes

5   demonstrate the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

6   317, 323 (1986).

7       Where the moving party has met its initial burden with a properly supported motion, the

8   party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ...

9   must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at

10   248.  The non-moving party may do this by use of affidavits, depositions, answers to

11   interrogatories, and admissions.  Id.  Only disputes over facts that might affect the outcome of the

12   suit under the governing law are "material" and will properly preclude entry of summary judgment.

13   Anderson, 477 U.S. at 248.

14       At the summary judgment stage, the judge's function is not to weigh the evidence or

15   determine the truth of the matter, but to determine whether there is a genuine issue for trial.

16   However, if the evidence is merely colorable or is not significantly probative, summary judgment

17   may be granted.  Anderson, 477 U.S. at 249-50.

18       In civil rights cases and in the context of a motion for summary judgment where a litigant is

19   proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford

20   the pro se litigant the benefit of any doubt.  Baker v. McNeil Island Corrections Ctr., 859 F.2d 124,

21   127 (9th Cir. 1988).

22       Plaintiffs did not respond to the motions for summary judgment.  Local Rule CR 7(b)(2)

23   provides that if a party fails to file papers in opposition to a motion, such failure may be considered

24   by the court as an admission that the motion has merit.  Where the local rule permits the court to

25   grant a motion for summary judgment when the nonmoving party fails to file opposing material, the

26   ORDER - 3

1    district court has discretion to determine whether summary judgment is appropriate.  Henry v. Gill

2    Industries, Inc., 983 F.2d 943, 949-50 (9th Cir. 1993).  Because Plaintiffs have failed to file a

3    response despite being given additional time to respond, the Court will deem Plaintiffs' failure an

4    admission the motions have merit.

5         Notwithstanding Plaintiffs failure to respond to Good Samaritan Hospital and PICC's

6    motions for summary judgment, the Court has reviewed said motions, the supporting statement of

7    facts and exhibits thereto, as well as the record before it and finds that Plaintiffs have failed to

8    produce evidence sufficient to support their claims, and therefore Good Samaritan Hospital and

9    PICC are entitled to summary judgment.

10                     **The Undisputed Facts**

11         A district court may grant an unopposed motion for summary judgment if the movant's

12    papers are themselves sufficient to support the motion and do not on their face reveal a genuine

13    issue of material fact.  Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).  A district court is not

14    required to probe the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d

15    1275, 1279 (9th Cir.1996).  The nonmoving party has the burden of identifying with reasonable

16    particularity the evidence that precludes summary judgment.  Id.

17         Plaintiffs have filed no opposition to Defendants' statement of the facts in support of their

18    motions for summary judgment.  Plaintiffs' original and amended complaints contain only bare

19    allegations.  Plaintiffs have set forth no specific facts in opposition to Defendants' Motion for

20    summary judgment, by affidavit or otherwise as provided by Fed. R Civ. P. 56(e)(2).  Accordingly,

21    the Court adopts the Defendants' statement of facts in their entirety.

22         On December 6, 2005, Plaintiff Katherine West presented to Good Samaritan Hospital

23     in labor.  She was 33 years old at the time, had three prior children, two prior C-sections, and

24    had not received any prenatal care during this pregnancy.  Dr. Kenneth Edstrom performed a

25    C-section and delivered a baby boy (whom plaintiffs call Baby Boy West). When Ms. West

26    ORDER - 4

1   registered at GSH, she told the clerk she was single and unemployed, and listed her father as her

2   next of kin and the only emergency contact. She did not mention Luis Ewing.  Mr. Ewing later told

3   the hospital social worker that he was the baby's father, but refused to sign a paternity affidavit.  He

4   was allowed to visit the baby after Ms. West placed a hospital armband on him. His visitation rights

5   were later revoked by CPS due to his behavior.  Ms. West consented to the administration of

6   medical treatments and tests when she was admitted to GSH.  Shortly after Ms. West's delivery, her

7   urine drug screen came back positive for methamphetamine, ecstasy and marijuana.  Her newborn's

8   pediatrician ordered that the baby be placed in the special care nursery for monitoring, and pursuant

9   to Washington law, Child Protective Services was notified.  Later that evening, Baby Boy West

10  developed increased respiratory distress and needed supplemental oxygen. Ms. West signed a

11  consent for GSH to provide medical care and treatment to Baby Boy West and a consent for the

12  hearing screening examination, but refused the Hepatitis B vaccine.  Therefore, the Hep B vaccine

13  was not given. Per physician orders, Baby Boy West received the standard dose of Vitamin K3 and

14  ophthalmic ointment.

15       While at GSH, Baby Boy West exhibited a number of drug withdrawal symptoms, including

16  difficulty with feedings (eventually requiring gavage feeding), increased jitteriness, runny stools,

17  increased muscle tone, and reflux. He remained under a police hold until December 8, and then was

18  placed under CPS custody per a Voluntary Placement Agreement Ms. West signed.  Ms. West was

19  allowed supervised visits.  However, Ms. West and Mr. Ewing were uncooperative with CPS during

20  Baby Boy West's admission, and eventually CPS directed that they both be denied hospital

21  visitation.  On December 13, Ms. West attempted to take the baby from the nursery unlawfully, and

22  was arrested by the Puyallup Police.

23       Under the direction of CPS, Baby Boy West was transferred to the Pediatric Interim Care

24  Center on December 14, 2005 for care and treatment of his drug-withdrawal symptoms.  Baby Boy

25  West remained at PICC until he was discharged to the care of Ms. West on December 22, 2005.

26  ORDER - 5

1    During that eight-day stay, PICC's physicians and nurses provided care and treatment for this

2    baby.

3                            **42 U.S.C. § 1981 Discrimination Claims**

4           Plaintiffs claim that GSH and PICC discriminated against them on the basis of (1) religion,

5    (2) marital status, and (3) race.  42 U.S.C. § 1981 concerns racial discrimination in the making and

6    enforcement of private contracts.  42 U.S.C. §198l; Patterson v. McLean Credit Union, 491 U.S.

7    164, 172 (1989).  The Ninth Circuit recognizes a Section 1981 claim for discrimination in

8    non-employment contracts. Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th  Cir.

9    2006).  To establish a prima facie case of racial discrimination in non-employment contracts, a

10   plaintiff must show: (1) he is a member of a racial minority; (2) Defendants intended to discriminate

11   against him on the basis of race; and (3) the discrimination concerned one or more of the activities

12   enumerated in the statute (i.e., the right to make and enforce contracts).

13          Even assuming that one or more of the Plaintiffs is a racial minority (American Indian),

14   there is no evidence whatsoever supporting an allegation of discrimination.  Ms. West was admitted

15   to GSH and she and her baby were provided the same level of care and treatment that all patients

16   are provided.  The same can be said for the treatment of Baby Boy West while in the care of PICC.

17   Plaintiffs have not provided any evidence to the contrary.

18          The Court finds that Plaintiffs have failed to set forth specific allegations of intentional

19   discrimination on account of race regarding GSH and PICC's care and treatment of the Plaintiffs.

20                            **42 U.S.C. § 1982 Equal Rights Claims**

21          Plaintiffs' Amended Complaint states claims based on 42 U.S.C. §1982.  Section 1982 states

22   that all United States citizens shall have an equal right to inherit, purchase, lease, sell, hold, and

23   convey real and personal property.  Plaintiffs have made no claims against GSH and PICC that fall

24   under this section.

25

26   ORDER - 6

**42 U.S.C. § 1983 Claims**

To establish a claim under § 1983, a plaintiff must show that (1) the action occurred "under color of law" and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. Parratt v. Taylor, 451 U.S. 527, 535 (1981). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive an individual of their federally guaranteed rights. McDade v. West, 223 F.3d 1135, 1139 (9th Cir. 1999). Plaintiffs have failed to set forth facts supporting either element.

Both Good Samaritan Hospital and Pediatric Interim Care Center are private entities. There is no evidence that these entities were acting under color of state law when providing care to Ms. West and her baby child.

Even if either entity were considered a state actor, Plaintiffs have not set forth any facts supporting a claim of denial of a federal right. There is no evidence of an (1) unlawful search and seizure, (2) denial of the right to counsel, (3) abridgment of the right of association, (4) denial of due process, or (5) denial of equal protection.

Plaintiffs 42 U.S.C. § 1983 claims are subject to dismissal.

**State Law Claims**

Plaintiffs allege state law causes of action for (1) medical negligence, (2) improper disclosure of medical information, (3) assault and battery, (4) false imprisonment, (5) malicious prosecution, and (6) "reserved claims" consisting of slander, wrongful infliction of emotional distress, outrage, and gross negligence. These state law claims lack a factual and legal basis.

Claims for medical negligence are governed by Washington statute. RCW 7.70.010, .030. Plaintiffs have produced no evidence in support of a medical negligence claim. Moreover, Plaintiffs may not commence an action against a health care provider based upon receipt of allegedly negligent health care unless the defendant has been given at least 90 days notice. RCW 7.70.100. Further, a certificate of merit is required for claims alleging a violation of the accepted

ORDER - 7

1   standard of care.  RCW 7.70.150.  Plaintiffs did not follow these mandatory procedural

2   requirements, and any professional negligence claims against GSH and PICC are subject to

3   dismissal.

4          Washington's Uniform Healthcare Information Act, RCW Ch. 70.02, governs the

5   disclosure of medical information.  Under this statute, a health care provider or health care

6   facility *shall* disclose health care information about a patient without the patient's authorization

7   to public health authorities to the extent the health care provider is required by law to report, and to

8   law enforcement authorities to the extent the health care provider is required by law to report.

9   RCW 70.02.050(2).

10          Moreover, a health care provider may disclose health care information about a patient

11   without the patient's authorization to another healthcare provider, if the facility reasonably believes

12   disclosure will avoid or minimize an imminent danger to the health or safety of the patient.  The

13   provider is also authorized to disclose healthcare information to law enforcement authorities if the

14   facility believes in good faith that the information disclosed constitutes evidence of criminal

15   conduct. RCW 70.02.050(1).

16          The actions of GSH and PICC in disclosing medical information conforms with the

17   provisions of Washington law.  Plaintiffs have produced no evidence to the contrary.

18          RCW Ch. 7.70 is the exclusive remedy for damages alleged to arise out of health care.  To

19   the extent Plaintiffs allege GSH and PICC committed an assault and battery, Plaintiffs have failed to

20   establish the elements of a cause of action pursuant to RCW 7.70.030.  Further, there is no evidence

21   that these defendants intentionally attempted to inflict, or actually inflicted, harm upon the Plaintiffs

22   or their child, Baby Boy West.  Nor is there any evidence of unlawful imprisonment.  GSH and

23   PICC at all times acted pursuant to legal authority in the treatment and care of Baby Boy West.

24   There is no evidence to the contrary.

25          The malicious prosecution claim is without merit as it is the Plaintiffs that have instituted

26   ORDER - 8

1   this suit, not Defendants.  See <u>Clark v. Baines</u>, 150 Wn.2d 905, 911, 84 P.3d 245 (2004).

2          The purported "reserved" claims also lack merit.  Whenever an injury occurs as a result of

3   health care, the action for damages for that injury is governed exclusively by RCW Ch. 7.70.

4   <u>Branom v. State of Wash</u>., 94 Wn. App. 964, 974 P.2d 335 (1995).  Plaintiffs have no factual or

5   legal basis for support of their reserved claims of slander, wrongful infliction of emotional distress,

6   outrage, and gross negligence.

7          Plaintiffs lack support for any of their state law claims against GSH and PICC and therefore

8   their state law claims are subject to dismissal with prejudice.

9                                              **Conclusion**

10         Plaintiffs lack both factual and legal support for the entirety of their claims, both federal and

11  state law claims.  For these reasons, Good Samaritan Hospital and Pediatric Interim Care Center are

12  entitled to summary judgment of dismissal of all claims against them.

13         ACCORDINGLY;

14         IT IS ORDERED:

15         (1)    Defendant Good Samaritan Hospital's Motion for Summary judgment [Dkt # 42] is

16                **GRANTED** and the Plaintiffs' claims against this defendant are dismissed in their

17                entirety, with prejudice.

18         (2)    Defendant Pediatric Interim Care Center's Motion for Summary Judgment Dismissal

19                [Dkt # 55] is **GRANTED** and Plaintiffs' claims against this defendant are dismissed

20                in their entirety, with prejudice.

21         DATED this 31st day of August, 2009.

22

23         _____

24         FRANKLIN D. BURGESS
           UNITED STATES DISTRICT JUDGE

25

26  ORDER - 9